IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN MIGUEL ORTEGA-SANTOS; KARLA MICHELLE FONTÁNEZ-CARRIÓN, **Plaintiffs,** **v.** SAN FRANCISCO HEALTH SYSTEM, INC. or METRO PAVÍA, INC., d/b/a METRO PAVÍA CLINIC CUPEY; HOSPITAL DEL MAESTRO, INC.; ADVANCE E.R. PHYSICIANS LLC; DR. RAHADAMES HERNÁNDEZ-SOTO, his wife JANE DOE AND THE CONJUGAL PARTNERSHIP FORMED BY THEM; DR. JOAQUIN A. REYES-VENTURA, her wife JANE ROE AND THE CONJUGAL PARTNERSHIP FORMED BY THEM; INSURANCE COMPANY "A"; INSURANCE COMPANY "B"; INSURANCE COMPANY "C": INSURANCE COMPANY "D"; INSURANCE COMPANY "E", **Defendants.** | Civil **No.** 20-1257 (FAB) |

OPINION AND ORDER

BESOSA, District Judge.

Juan Miguel Ortega-Santos ("Ortega") and Karla Michelle Fontánez-Carrión ("Fontánez," and together with Ortega, "plaintiffs") commenced this action. (Docket No. 1.) They assert claims pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), and pursuant to medical

malpractice provisions of Puerto Rico law.  Id.  They name as
defendants: San Francisco Health System, Inc. or Metro Pavía, Inc.,
d/b/a Metro Pavía Clinic Cupey ("Metro Pavía Clinic"); Hospital
Del Maestro, Inc. ("Hospital Del Maestro"); Advance E.R.
Physicians LLC; Dr. Rahadames Hernández-Soto ("Dr. Hernández"),
his wife, and their conjugal partnership; Dr. Joaquin A. Reyes-
Ventura ("Dr. Reyes"), his wife, and their conjugal partnership;
and five unidentified insurance companies.  Id.

Pending before the Court is a motion by Hospital Del Maestro.
(Docket No. 9.)  Hospital Del Maestro argues that this Court should
dismiss the claims against it for lack of subject matter
jurisdiction.  Id. at pp. 1-2.  Hospital Del Maestro also argues
that plaintiffs do not state a cause of action pursuant to the
EMTALA against the hospital.[1]  Id.  Additionally, Hospital Del
Maestro argues that EMTALA does not provide a cause of action for
a third party like Fontánez.  Id. at p. 2.

As discussed below, Hospital Del Maestro's motion to dismiss
is **GRANTED IN PART AND DENIED IN PART**.  The plaintiffs' EMTALA
claim against Hospital Del Maestro is **DISMISSED WITHOUT PREJUDICE**.

---

[1] At times, Hospital Del Maestro frames its motion as requesting dismissal of
all the claims against all the defendants.  See, e.g., Docket No. 9 at p. 2.
For Rule 12(b) motions, "[t]he movant may obtain relief only as to himself; the
movant has no standing to seek dismissal of the action as to nonmoving parties."
5B Arthur R. Miller et al., Fed. Prac. & Proc. Civ. § 1349 (3d ed. 2020).  The
other defendants have not moved to dismiss the claims against them.  The Court
only considers whether to dismiss the claims against Hospital Del Maestro.

## I.    Background

The Court draws the following facts from the complaint. (Docket No. 1.)  The Court "take[s] as true the allegations of the complaint, as well as any inferences . . . [the Court] can draw from it in the plaintiff[s'] favor."  <u>Zenón v. Guzmán</u>, 924 F.3d 611, 615 (1st Cir. 2019).[2]

Ortega went to the emergency room at Metro Pavía Clinic due to pain in his ribs and difficulty breathing.  (Docket No. 1 at p. 4.)  His was prescribed a few medications and his vital signs were taken.  <u>Id.</u>  Dr. Hernández documented the main complaint as pain in the right back for several days which was exacerbated by movement.  <u>Id.</u> at p. 5.  Dr. Hernández eventually diagnosed Ortega as having spasms in the right portion of his back.  <u>Id.</u>  Ortega was discharged and referred to his primary physician.  <u>Id.</u>

Approximately two days later, Ortega went to the emergency room at Hospital Del Maestro.  <u>Id.</u>  His vital signs were taken. <u>Id.</u>  Dr. Reyes documented the main complaint as pain in the right side.  <u>Id.</u>  According to plaintiffs,

---

[2] As discussed below, the Court considers defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

> The review by systems was totally normal, including the
> muscular skeletal system, where it was documented that
> there was no back, chest or joint pain.  There was also
> no respiratory distress.  The physical examination was
> essentially normal even in lung auscultation and
> skeletal muscle system.  The diagnosis impression was
> not documented.

Id.  Dr. Reyes ordered x-rays, prescribed medications, re-evaluated Ortega, retook Ortega's vital signs, diagnosed Ortega as having pain on the right side, and released him with instructions to follow up with his primary physician.  Id.

The next day, the x-rays ordered by Dr. Reyes were interpreted.  Id. at p. 6.  A right pleural effusion was found.  Id.  The radiologist indicated that the effusion had to be correlated with a chest x-ray.  Id.  No one from Hospital Del Maestro contacted Ortega about the finding.  Id.  When Ortega returned to the radiology department of Hospital Del Maestro a few days later to pick up the radiograph, no one mentioned the finding to him.  Id.

Ortega visited another doctor almost a week later.  Id.  The doctor diagnosed acute gastroenteritis.  Id.  The doctor prescribed medications, an irritant-free diet, and a follow-up with Ortega's primary physician.  Id.

After two days, Ortega was taken to an emergency room at another hospital.  Id. at pp. 6-7.  This time, he had abdominal pain, diarrhea, and pain throughout the body.  Id.  The emergency

room physician ordered a CT scan of Ortega's abdomen and pelvis. Id. at p. 7.  The scan "revealed a fluid collection in the right pleural, compatible with an empyema (abscess in the pleural cavity)."  Id. at p. 7.  The next morning Ortega was diagnosed with empyema with leukocytosis and hypoxemia and admitted to the intensive care unit.  Id.  He remained there for roughly eleven days, then spent some time in a regular room before being discharged.  Id.

## II.  Subject Matter Jurisdiction

### A.  Legal Standard

Federal question jurisdiction exists in "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To invoke federal question jurisdiction, a plaintiff "must pay tribute to the well-pleaded complaint rule." R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 48 (1st Cir. 2009).  A plaintiff may satisfy the rule with a complaint that "exhibit[s], within its four corners, . . . an explicit federal cause of action."  Id.

### B.  Discussion

EMTALA is a federal law.  So plaintiffs' claim pursuant to EMTALA arises under federal law.  28 U.S.C. § 1331.

Hospital Del Maestro confuses jurisdictional requirements with substantive requirements.  According to Hospital

Del Maestro, plaintiffs cannot invoke federal subject matter jurisdiction because their EMTALA claim against the hospital lacks merit.  (Docket No. 9 at p. 2.)  While this Court agrees with Hospital Del Maestro that the EMTALA claim against it is not one upon which relief can be granted (as discussed below), this is a matter to be resolved pursuant to Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1).  See Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006) (distinguishing between subject matter jurisdiction decisions and merits-related determinations); Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 717 F.3d 63, 67–68 (1st Cir. 2013) (explaining that a district court erroneously used a jurisdictional framework to evaluate the merits of a plaintiff's EMTALA claim).  Hospital Del Maestro's request to dismiss the complaint for lack of subject matter jurisdiction is **DENIED**.

Hospital Del Maestro also asks the Court not to exercise supplemental jurisdiction over the plaintiffs' Puerto Rico law-based medical malpractice claim.  This claim is "so related" to plaintiffs' federal claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  Additionally, although the Court dismisses in this opinion the EMTALA claim against Hospital Del Maestro, the EMTALA claim against Metro Pavía Clinic and the medical malpractice

claim against Metro Pavía Clinic and the other defendants remain.
Consequently, at this time, Hospital Del Maestro's request to
dismiss the Puerto Rico law-based medical malpractice claim
against Hospital Del Maestro is **DENIED**.

**III. Rule 12(b)(6)**

**A.   Legal Standard**

Rule 12(b)(6) permits a defendant to move to dismiss an
action for "failure to state a claim upon which relief can be
granted." Fed. R. Civ. P. 12(b)(6).  To survive the motion, "a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially
plausible if, after accepting as true all non-conclusory factual
allegations, the court can draw the reasonable inference that the
defendant is liable for the misconduct alleged. Ocasio-Hernández
v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "Plausible, of
course, means something more than merely possible, and gauging a
pleaded situation's plausibility is a context-specific job that
compels . . . [a court] to draw on . . . [its] judicial experience
and common sense." Zenón, 924 F.3d at 616 (internal quotation
marks omitted). A court must decide whether the complaint alleges
sufficient facts to "raise a right to relief above the speculative

level." <u>Twombly</u>, 550 U.S. at 555.  The burden is on the plaintiff
to allege a viable cause of action plausibly.  <u>Hochendoner v.
Genzyme Corp.</u>, 823 F.3d 724, 730 (1st Cir. 2016).

     Assessing the adequacy of a complaint in the First
Circuit involves two steps.  <u>Zenón</u>, 924 F.3d at 615-16.  First, a
court "isolate[s] and ignore[s] statements in the complaint that
simply offer legal labels and conclusions or merely rehash cause-
of-action elements."  <u>Id.</u> at 615 (internal quotation marks
omitted).  Second, the court "take[s] the complaint's well-pled
(i.e., non-conclusory, non-speculative) facts as true, drawing all
reasonable inferences in the pleader's favor" to "see if they
plausibly narrate a claim for relief."  <u>Id.</u> at 615-16 (internal
quotation marks omitted).

**B.  Discussion**

     Plaintiffs do not plausibly state a claim pursuant to
EMTALA against Hospital Del Maestro.

     To begin with, the Court **DISMISSES WITHOUT PREJUDICE**
Fontánez's EMTALA claim against Hospital Del Maestro.  This Court
has held that the EMTALA does not afford a cause of action to a
relative of a living patient.  <u>Malavé-Sastre v. Hosp. Doctor's
Ctr., Inc.</u>, 93 F. Supp. 2d 105, 111 (D.P.R. 2000) (Pieras, J.).
The <u>Malavé-Sastre</u> court acknowledged the First Circuit Court of
Appeals' statement that a "'superficially plausible'" a reading of

the EMTALA affords a cause of action to "an individual who has a special relationship with another—say, a wife deprived of consortium or . . . a bereaved relative—to sue when she is harmed in direct consequence of an EMTALA violation inflicted upon such other."  Id.; see Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995); see also Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc., 889 F.3d 30, 35–36 (1st Cir. 2018) (reiterating the Correa perspective).  The Malavé-Sastre court, however, held that "the scope of the First Circuit's holding is circumscribed to a situation where the heirs of a dead patient inherit his or her EMTALA cause of action."  93 F. Supp. 2d at 111.  And, whatever the scope of the EMTALA or the Correa holding, plaintiffs themselves request the Court grant Hospital Del Maestro's motion to dismiss Fontánez's EMTALA claim against Hospital Del Maestro. (Docket No. 17 at pp. 2, 11.)

The First Circuit Court of Appeals has explained the requirements for an EMTALA claim:

> To establish an EMTALA violation, a plaintiff must show (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department; (2) the plaintiff arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) released the patient without first stabilizing the emergency medical condition.

Cruz-Vázquez, 717 F.3d at 68.  Here, Ortega alleges that Hospital Del Maestro did not appropriately screen him and released him without first stabilizing his condition.

In the absence of a definition in the EMTALA of an appropriate screening, the First Circuit Court of Appeals has explained that a hospital has a duty to provide an examination "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints.  The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly."  Id. at 69 (internal quotation marks omitted).  "[A] refusal to follow regular screening procedures in a particular instance contravenes the statute, but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute."  Id. (internal quotation marks omitted).  The court also distinguishes the failure to follow a screening protocol when triggering symptoms are identified "from situations where: (1) no screening protocol existed; (2) standard screening procedures existed but were not followed because no identifiable triggering symptoms were presented; and (3) standard screening procedures were in fact

followed when identifiable triggering symptoms were presented but an improper diagnosis resulted." Id. (citations omitted).

This Court has no trouble concluding that Ortega fails to state an EMTALA screening violation claim against Hospital del Maestro. Ortega does not allege that Hospital Del Maestro failed to apply a screening procedure uniformly. (Docket No. 1 at pp. 5-6.) He does not even allege that the hospital has a screening procedure. Id. Nor does he allege that the screening he received was not "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients." Id.; see Cruz-Vázquez, 717 F.3d at 69. In fact, Ortega alleges that his vital signs were taken twice, a review by systems was undertaken (which "was totally normal"), respiratory distress was examined (and none was identified), and a physical examination was conducted (which "was essentially normal even in lung auscultation and skeletal muscle system"). (Docket No. 1 at p. 6.) The most generous reading of Ortega's claim is that Hospital Del Maestro's screening was somehow faulty or resulted in an improper diagnosis, see id. at pp. 6-7, but these allegations are insufficient to state a claim for violation of the EMTALA screening requirement. Cruz-Vázquez, 717 F.3d at 69.

Ortega may be suggesting that Hospital Del Maestro should have screened him again when he "went to the radiology

department of the Hospital [D]el Maestro" to collect his radiographs.  <u>See</u> Docket No. 1 at p. 6.  If so, the suggestion fails.  The duty to screen arises when a patient comes to the emergency room, not anytime he comes to the hospital.  <u>Reynolds v. MaineGeneral Health</u>, 218 F.3d 78, 82 (1st Cir. 2000).

Ortega may also be implying that Hospital Del Maestro's screening violated the EMTALA because he was discharged before the results of his x-rays were interpreted.  <u>See</u> Docket No. 1 at pp. 6-7.  This argument fails too.

First, Ortega does not allege that the pre-interpretation discharge broke with regular screening procedures, constitutes disparate screening, or a failure to screen.  This omission is sufficient to conclude that the pre-interpretation discharge does not support an EMTALA screening claim.  <u>Cruz-Vázquez</u>, 717 F.3d at 69.

Second, the symptoms that Ortega presented at Hospital Del Maestro—"the main complaint was pain in the right side"—were quite general.  (Docket No. 1 at p. 5.)  The First Circuit Court of Appeals has explained that similarly general symptoms, like nausea and dizziness, do not by themselves necessarily indicate an emergency medical condition which must be screened pursuant to the EMTALA.  <u>Reynolds</u>, 218 F.3d at 82.  When coupled with other risk-factors like medical history, the <u>Reynolds</u> court stated, those

general symptoms could warrant further screening. <u>Id.</u> Here,
Ortega alleges nothing about other risk-factors for a pleural
effusion. (Docket No. 1 at pp. 5-6.) Like the <u>Reynolds</u> court,
this Court refuses to interpret the EMTALA to require a hospital
to screen for every medical condition that could possibly underlie
general symptoms. <u>Reynolds</u>, 218 F.3d at 81-82. And, as in
<u>Reynolds</u>, Ortega received screening and treatment related to the
symptoms and conditions he presented. <u>See</u> (Docket No. 1 at pp. 5-
6); <u>Reynolds</u>, 218 F.3d at 82. These are additional reasons why
Ortega's discharge from Hospital Del Maestro before interpretation
of the radiograph does not plausibly state a claim for violation
of the EMTALA screening requirement.

        As noted, Ortega also alleges that Hospital Del Maestro
violated the EMTALA by not stabilizing his condition before
discharge. It is clear from Ortega's allegations that he was
discharged before anyone at the hospital knew of the plural
effusion. <u>See</u> Docket No. 1 at pp. 6-7. The First Circuit Court
of Appeals has stated that "[i]t is doubtful that the text of the
statute would support liability under the stabilization provision
for a patient who had . . . [a condition], absent evidence
sufficient to support a finding that the hospital knew of . . .
[the condition]." <u>Reynolds</u>, 218 F.3d at 85. The <u>Reynolds</u> court
pointed to two other circuit courts of appeal which held there is

no liability in those circumstances.  Id.  This Court holds that,
in the circumstances present here, Hospital Del Maestro had no
duty to stabilize the pleural effusion of which it had no knowledge
before discharge.

        Additionally, to the extent Ortega argues that Hospital
Del Maestro violated its duty to stabilize when he returned to the
hospital to collect his radiographs, he is mistaken.  "[A] hospital
cannot violate the duty to stabilize unless it transfers a patient,
as that procedure is defined in EMTALA."  Álvarez-Torres v. Ryder
Mem'l Hosp., Inc., 582 F.3d 47, 51–52 (1st Cir. 2009).  The EMTALA
defines "transfer" as "the movement (including the discharge) of
an individual outside a hospital's facilities at the direction of
any person employed by (or affiliated or associated, directly or
indirectly, with) the hospital."  42 U.S.C. § 1395dd(e)(4).  Ortega
does not allege—and the most sympathetic reading of his complaint
does not imply—that anyone at Hospital Del Maestro directed him to
leave the hospital, or discharged him from the hospital, when he
went to collect his radiograph.  (Docket No. 1 at p. 7.)

        The Court holds both (i) that there was no duty to
stabilize the pleural effusion because it was unknown at the time
of discharge, and (ii) that the discharge before knowledge of the
effusion did not violate the screening requirement.  Moreover,
even when the pleural effusion was known upon Ortega's return to

the radiology department, the EMTALA did not impose a duty on the hospital to stabilize the condition before Ortega left.

The holdings in this opinion are rooted in the limited scope of the EMTALA and the inapplicable nature of Ortega's allegations. The EMTALA "is a limited anti-dumping statute, not a federal malpractice statute." Reynolds, 218 F.3d at 83 (internal quotation marks omitted). Ortega and Fontánez do not allege facts which place them within the EMTALA's limited scope.

## IV. Conclusion

For the reasons discussed above, Hospital Del Maestro's motion to dismiss, (Docket No. 9,) is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs' EMTALA claim against Hospital Del Maestro is **DISMISSED WITHOUT PREJUDICE**. All other claims against Hospital Del Maestro and the other defendants remain.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 14, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE